IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JONATHAN LINDER,

    Plaintiff,

v.

THE CITY OF EMERYVILLE, et al.,,

    Defendants.

No. C -13-01934 EDL

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

In this case brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges, among other things, that police officers used excessive force against him. On June 4, 2013, Defendants moved to dismiss Plaintiff's original complaint, and on August 6, 2013, the Court granted in part and denied in part Defendants' motion to dismiss. On August 19, 2013, Plaintiff timely filed an amended complaint.

On September 3, 2013, Defendants filed a Motion to Dismiss Plaintiff's claims in the amended complaint against all Defendants except for four claims against the officers involved in the incident. Plaintiff did not file an opposition to the motion to dismiss by the deadline of September 17, 2013. Because this matter was appropriate for decision without oral argument, the Court vacated the October 22, 2013 hearing. Because Plaintiff failed to oppose this motion and for the reasons stated in this Order, Defendants' Motion to Dismiss is granted without leave to amend.

**Allegations from the complaint**

Plaintiff makes the following allegations in the first amended complaint. On April 27, 2012, at approximately 11:30 p.m., Plaintiff, his wife, three neighbors and a guest were standing around the fire pit at the Emeryville Marina. First Am. Compl. ("FAC") at 6. Emeryville Police Officer Andrew Cassianos approached the group and told them to extinguish the fire and to board their boats. Id. Three members of the group around the fire pit left immediately. Id. Plaintiff, his wife

1  and a disabled man in a wheelchair remained to gather their belongings. Id. As he packed his
2  backpack and helped his wife and his friend gather their property, Officer Cassianos ordered them to
3  board their boats immediately. Id. at 6-7. Plaintiff questioned Officer Cassianos as to the rules
4  regarding the fire pit and as to his jurisdiction on the Marina property. Id. at 7. Officer Cassianos
5  allegedly responded that the property behind the main gate belonged to the City and that members
6  were not allowed off the docks after 9:00 p.m., and that fires required a permit. Id. Officer
7  Cassianos threatened to issue citations if Plaintiff's group did not leave immediately. Id. at 6-7.

8  Plaintiff began to walk away from the fire pit, and Officer Cassianos immediately ran from
9  the street-side stairway while calling for back-up assistance to intercept Plaintiff leaving the fire pit.
10 FAC at 7. Officer Cassianos blocked Plaintiff's path with his arm outstretched and asked for
11 Plaintiff's name. Id. Plaintiff asked Officer Cassianos if Plaintiff was being detained, and Officer
12 Cassianos said that he was not. Id. Plaintiff did not want to show his identification to Officer
13 Cassianos and stated that Officer Cassianos had jurisdiction on the Marina. Id. This conversation
14 was allegedly recorded on a friend's answering machine, but was automatically deleted, and also on
15 Officer Cassianos' body camera. Id. at 8.

16 Officer Cassianos then began physically attacking Plaintiff. FAC at 8. Officer Cassianos
17 seized Plaintiff's phone and keys from around his neck, knocked off his glasses, and punched
18 Plaintiff in the chest. Id. Backup from the Emeryville Police Department arrived and did not break
19 up the violence despite pleas from Plaintiff's wife and friend. Id. Officer Cassianos then fired his
20 taser gun at Plaintiff from behind at virtually point blank range and then an additional four or five
21 taser guns were fired at Plaintiff. Id. During this incident, Plaintiff saw a badgecam and, mistaking
22 it for his own property, tossed it towards his wife. Id.

23 After being shot with the taser gun, Plaintiff was kneeling on the ground in pain when an
24 officer leapt onto his back, applied a choke hold, and cuffed Plaintiff. FAC at 10. Then an officer
25 smashed Plaintiff's right temple with the butt of a gun, and Officer Cassianos sat on Plaintiff's back
26 in a hogtie position, twisting Plaintiff's ankle and almost breaking the bone. Id.

27 Plaintiff was taken to the hospital where he sat for 6.5 hours while he waited for an ankle
28 cast. FAC at 10. He was then transported to the Emeryville Police Department where Officer

2

1 Cassiano read the charges against him. Id. at 11. Plaintiff spent several days processing through
2 various jails until he was released after all charges had been dropped. Id.
3      Plaintiff and his wife attended a City Council Marina Committee meeting the day after his
4 release, and demanded clarification of the rules so this kind of incident would not be repeated. FAC
5 at 12. The harbormaster stated that the Marina property including the firepit were under the
6 auspices of the harbormaster as defined in the lease. Id. Police Chief James contended otherwise.
7 Id.

**Legal Standard**

9      A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to
10 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)
11 (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's
12 "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in
13 the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th
14 Cir. 2008).
15      A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S.
16 Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be
17 supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying
18 pleadings that, because they are no more than conclusions, are not entitled to the assumption of
19 truth." Id.
20      Courts must then determine whether the factual allegations in the complaint "plausibly give
21 rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability
22 requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not
23 permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal
24 quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the
25 line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

27      Despite the Court's order dismissing without leave to amend Plaintiff's claims based on the
28 Racketeer Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. §§ 1961, et seq., and on

identity theft, Plaintiff has re-alleged six RICO or RICO-related claims (13th, 14th, 15th, 16th, 17th, and 20th) and two identity theft claims (18th and 19th). These claims are again dismissed without leave to amend.

**1. Plaintiff's 42 U.S.C. § 1983 claims for municipal liability (2nd, 3rd, 5th, 7th, 8th, 9th, 10th and 12th) are dismissed without leave to amend**

   **A.   Plaintiff has failed to state a claim for municipal liability**

Municipal liability may be established in one of three ways: (1) proof that the municipal employee committed the alleged constitutional violation pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of a local governmental entity; (2) proof that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged conduct was thus an act of official government policy; and (3) proof that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. See Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992). Here, although Plaintiff alleges municipal liability in all of these claims, he fails to allege facts relating to his claims and instead states conclusions. For example, in the second claim, Plaintiff does not state facts to support his claim of inadequate training and deliberate indifference. See Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."). Instead, he relies on his own single incident, which is insufficient. Although he also relies on comments by a City Council member to support his failure to train claim, the City Council member is only alleged to have stated her general support for the Emeryville Police Department (FAC at 15), which does not sufficiently allege deliberate indifference or failure to train.

With respect to the ratification claims (3rd, 5th, 7th, 9th and 12th claims), Plaintiff states that the incident was not throughly investigated, those responsible were not punished, and procedures and policies were not modified after the incident. However, he does not provide any facts to support these conclusions, and does not allege that the supposed excessive force against Plaintiff was ratified by any final policy-maker.

Finally, the customs and practice claim (tenth claim) also does not allege any facts aside

4

from the facts of the alleged incident in this case, and merely states that there is a custom to inadequately and improperly investigate citizen complaints, supervise and train police officers, and a custom to fail to discourage further constitutional violations. These conclusory allegations are insufficient to meet the pleading standard.

### B. In addition, some of Plaintiff's municipal liability claims under § 1983 are impermissibly based on state law torts

Plaintiff's fifth, seventh, ninth, and twelfth claims premise municipal liability under § 1983 on state law torts. Section 1983, however, only protects against violation of the Constitution or federal laws. See West v. Atkins, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

### C. Municipal liability claims against Police Chief James in his official capacity should be dismissed

In the Court's last order on Defendants' motion to dismiss, the Court noted that the complaint was not clear as to whether Chief James was being sued in his individual or official capacity. See Larez v. City of Los Angeles, 946 F.2d 630, 646 (holding that a police chief may be liable in an individual or official capacity under § 1983). The amended complaint does not contain any allegations against Chief James in his individual capacity, and all allegations (to the extent there are any against Chief James specifically) are as to his official capacity.

Claims against Chief James in his official capacity are superfluous. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Therefore, the municipal liability claims against him are dismissed because even though Chief James could be liable in an individual and/or official capacity for the municipal liability claims, Plaintiff has failed to allege any facts against him in his individual capacity, and the official capacity claims are superfluous.

### D. Conclusion as to municipal liability claims

Plaintiff's 2nd, 3rd, 5th, 7th, 9th, 10th, and 12th claims against the City, the Police Department and Chief James are dismissed for failure to state a claim and for failure to allege a

5

violation of constitutional or federal rights. Plaintiff has already been given one opportunity to amend and he has not opposed this motion to dismiss, so leave to amend is denied.

**2. Plaintiff's claim for malicious abuse of process and false arrest (8th claim) is dismissed without leave to amend**

In the Court's prior order, the Court granted the motion to dismiss Plaintiff's malicious prosecution claim without leave to amend on the grounds that the claim was barred by governmental immunities in California Government Code sections 821.6 and 815.2. Plaintiff has clarified in his amended complaint that he is not making a claim for malicious prosecution, but is making a claim for malicious abuse of process.

**A. Plaintiff's malicious abuse of process claim is barred by governmental immunity**

California Government Code section 821.6 states, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. Section 821.6 is not limited to conduct during formal proceedings, but also provides immunity for conduct during an investigation because investigation is an "essential step" towards the formal proceeding. See Amylou R. v. County of Riverside, 28 Cal. App. 4th 1205, 1209-10 (1994). Further, courts have held that section 821.6 applies to malicious abuse of process claims. See, e.g., Garcia v. City of Merced, 637 F. Supp. 2d 731, 751 (E.D. Cal. 2008).

The allegations in the complaint demonstrate that this claim is barred by California Government Code section 821.6. Defendants have immunity for actions within the scope of their employment as police officers, so even though Plaintiff alleges that they acted maliciously, they are immune from liability for malicious abuse of process. Defendants' motion to dismiss this claim on this ground is granted without leave to amend. Therefore, the Court need not reach Defendants' alternative ground for dismissal that Plaintiff has failed to state a claim.

**B. Plaintiff has failed to state a claim for false arrest**

Although Plaintiff claims both false arrest and false imprisonment, they are not separate torts and "false arrest is but one way of committing a false imprisonment." Collins v. City and County of San Francisco, 50 Cal. App. 3d 671, 673 (1975). Plaintiff may claim false arrest if there is an allegation that the arrest was without process, imprisonment occurred, and there were damages. See

Garcia v. City of Merced, 637 F. Supp. 2d 731, 752 (2008).

The Court previously denied Defendants' motion to dismiss the false arrest claim. Defendants ask the Court to reconsider the ruling that Plaintiff has adequately alleged lack of probable cause in connection with the false arrest claim based on the lease governing the marina where the incident took place. The Court may consider the lease in connection with this motion pursuant to the incorporation by reference doctrine. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) ("Our approach is permissible under the 'incorporation by reference' doctrine, which permits us to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.' We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.") (internal citations omitted). Here, the lease is alleged in the complaint, and there is no dispute as to its authenticity.

The lease shows that at the time of the incident, the Marina, including the fire pit area, was subject to the laws of the City of Emeryville. See Allen Decl. Ex. A at 19.02 (stating that the "tenant shall not use or occupy , nor permit or suffer the Property or any part thereof to be used or occupied for any unlawful or illegal business, use or purpose, or for any business, use or purpose in any material way in violation of any present or future governmental laws, ordinances, requirements, orders, directions, rules or regulations."). Therefore, the officers were within their jurisdiction at the Marina and had the power to arrest Plaintiff because he was at the fire pit at 11:30 p.m., whereas the City of Emeryville Municipal Code section 5-24.11 provides that all City parks are closed after 9:00 p.m. Accordingly, Plaintiff has failed to state a claim for false arrest.

**3. Plaintiff's punitive damages claim against the City, the Police Department and the Defendants in their official capacities is dismissed**

Even if claims against the City, the Police Department and the officers in their official capacities survived Defendants' motion to dismiss, the request for punitive damages would not survive against those Defendants. See City of Newport v. Fact Concepts, Inc., 453 U.S. 247, 271 (1981) (". . . we hold that a municipality is immune from punitive damages under 42 U.S.C. §

7

1983."); Cal. Gov't Code § 818 ("Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."). Thus, the punitive damages claim is dismissed.

**4. Plaintiff's request for attorney's fees is dismissed**

Pro se plaintiffs who prevail in § 1983 cases are not entitled to an award of attorney's fees. See Gonzales v. Kangas, 814 F.2d 1411, 1411-12 (9th Cir. 1987) (holding the pro se litigant not entitled to fees). Plaintiff has not incurred fees because he is representing himself, nor has he alleged a state law claim authorizing attorney's fees.

**Conclusion**

Defendants' motion to dismiss is granted without leave to amend.

**IT IS SO ORDERED.**

Dated: October 10, 2013


ELIZABETH D. LAPORTE
United States Magistrate Judge

8